THE STATE ex rel. GEORGE PARSONS *vs.* D. W. JONES et al. COMMISSIONERS OF SCHOOL AND UNIVERSITY LANDS.

AND THE STATE ex rel. E. B. PARSONS *vs.* THE SAME.

TWO ALTERNATIVE WRITS OF MANDAMUS.

Heard July 14.]                    [Decided August 12, 1859.

*School Lands—Swamp Lands—Grants—Patents for Lands.*

The State of Wisconsin has not the title to the swamp and overflowed lands within its limits, until the patent for the lands shall issue to the state for the same; and the commissioners of the school and university lands cannot be compelled to receive the money, and grant patents for such lands, before the state shall obtain such title by patent.

Whether the governor can relinquish the claim of the state to swamp and overflowed lands after they have once been selected and set apart for the state; so as to bar the state from claiming title to said lands, should it be made to appear that they were embraced within the act of Congress donating the same. (Quere?)

By the terms of chap. 84, 31st Congress, 9 Statute at Large, 519, the fee simple of the swamp and overflowed lands does not vest in the state until the patent issues. The title, it would seem, must pass by patent and not by the act of Congress, as in many other cases.

These two writs of mandamus are in all respects similar, except as to the tracts of land described in the writs. The one is for lots one and two, and the northwest quarter of section 23, town 27, range 27 east; and the other is for lots one and two, and the south half of the southwest quarter of section 14 of the same township. The petitions aver that the lands were returned as swamp lands by the surveyors of the United States lands, and had been selected as such by the governor of the state, and they had been approved by the United States government under the act of

State ex rel. Parsons vs. Commissioners.

Congress, entitled "An act to enable the State of Arkansas, and other states, to reclaim the swamp lands within their limits." The relators had entered upon the lands, and were occupying the same, making improvements thereon, and using them for agricultural purposes, and claimed a right of pre-emption under the act of the state, "for the protection of the swamp and overflowed lands of the state, and to grant pre-emption rights thereon." That the relators had each of them made application to purchase the lands of the school land commissioners by pre-emption; but the commissioners had refused to issue the certificates of purchase to the relators. Therefore, they separately prayed for alternative writs, to compel the commissioners to issue the certificates.

The writs having been issued and served, the attorney general now moved the court to quash the writs.

*Gabriel W. Bouck,* Attorney-General for the defendants

*Wakeley & Tenney,* for the relators.


*By the Court,* COLE, J. It seems to us that it would be entirely useless and unavailing, not to say improper, for this court to grant a peremptory writ of mandamus, commanding the commissioners of the school and university lands, to permit the relators in the above cases to purchase the lands mentioned in their respective relations, and to issue certificates of purchase therefor, unless the state has the legal title to the land which the commissioners are required to sell. For to what purpose shall the commissioners go through the formality of selling lands to which the state has never acquired the title? What beneficial result can flow from so idle a ceremony? We can think of none.

The attorney-general has moved to quash the alternative writs herein, for the reason that it does not appear from the relations that these lands have ever been patented to the state. He contends that until such patent issues from the general government, that the title to the lands does not be-

come vested in the state, and consequently that the commissioners have no authority to sell the same.

Upon an examination of the relations, they fail to show that these lands have ever been patented to the state, or, in other words, it does not appear that the state has acquired the legal title to them; and consequently it is difficult to understand what right the state has to dispose of them before it has acquired such a title. For manifestly the state could convey to the purchaser no greater title than itself possessed. Now whatever claim in equity the state may have to the swamp and overflowed lands within its limits, by virtue of the provisions of chap. 84, § 1, of the acts of 31 Congress (see 9 vol. U. S., Stat. at Large, p. 519); yet we think it quite obvious that by the terms of that act, the fee simple to the lands does not vest in the state until the patent issues. It is true the language of the first section of the act would favor the idea that it was the intention of Congress to make a grant which should operate, *in presenti*, and vest the title absolutely in the states which were the objects of the grant, by the act itself; but still, if the second section is examined, it will be seen that provision is made for the issuing of patents for the swamp and overflowed lands, on the request of the governor of the state (in which such lands are situated), and it is expressly declared that " *on that patent the fee simple to said lands,* shall vest in said states," &c., " subject to the disposal of the legislature thereof." This language shows, in the clearest manner, that the title to these lands remains in the general government until the patent issues. Such being the case, and if no patent has issued to the state for the lands mentioned in the relations in the above cases, we cannot see what right the state has to sell them.

In each relation it is stated in substance, that the late and present commissioners have refused to receive the purchase

money of said land, on behalf of the state, or to issue any certificates of purchase; and have decided that the land was not subject to any pre-emption claim, or to sale by the state, for the reason that the governor of the state did, on or about the 15th day of November, 1855, address a letter to the Secretary of the Interior, withdrawing the claim of the state to such land therein described, and that the secretary had, accordingly, rejected them from the lists of swamp and overflowed lands, after a formal revocation of his approval of the selection. What would be the effect of this action of the governor, or whether it would conclude, or bar the state from setting up any further claim to these lands, providing it appeared they were clearly embraced within the act of Congress, we are not called upon to express any opinion.

We have referred to this portion of the relation for the purpose of observing that it satisfactorily appears from these averments, that the patent to these lands has never issued to the state under the law. We must, therefore, hold that the commissioners, under the circumstances, very properly refused to sell them. These remarks seem to be all that it is necessary to make upon the points raised by the motion.

We think the motion to quash the alternative writ of mandamus, must be sustained in each case.